656 S.E.2d 344

**In the Matter of Jasper County Magistrate Donna D. LYNAH, Respondent.**

**No. 26415.**

Supreme Court of South Carolina.

Submitted Oct. 30, 2007.

Decided Jan. 14, 2008.

162

Lesley M. Coggiola, Disciplinary Counsel, and James G. Bogle, Jr., Senior Assistant Attorney General, both of Columbia, for Office of Disciplinary Counsel.

Donna D. Lynah, of Ridgeland, pro se.

## DEFINITE SUSPENSION

PER CURIAM.

In this judicial disciplinary matter, respondent and the Office of Disciplinary Counsel (ODC) have entered into an Agreement for Discipline by Consent pursuant to Rule 21, RJDE, Rule 502, SCACR. In the agreement, respondent admits misconduct and consents to the imposition of a sanction pursuant to Rule 7(b), RJDE, Rule 502, SCACR. We accept

the agreement and impose a ninety (90) day suspension. The facts as set forth in the agreement are as follows.

## FACTS

In 1999, 2006, and 2007, the Chief Justice of the Supreme Court of South Carolina issued detailed orders setting forth specific requirements for financial accounting in all magistrate courts in this state. Respondent attended training concerning the requirements of those orders, but knowingly did not comply with them in at least one or more of the following particulars: 1) she failed to insure that deposits were made as required by the orders and 2) she failed to insure that the bank accounts were reconciled monthly as required by the orders.

On June 13, 2007, the Chief Magistrate for Jasper County held a quarterly meeting with the magistrates, including respondent. Prior to the meeting, the Chief Magistrate had requested all magistrates bring certain bank reconciliation paperwork to the meeting. Respondent informed the Chief Magistrate that she did not have the reconciliations because her office assistant, Paula Willis, needed additional time to sort out some discrepancies with the deposits to the civil and criminal magistrate court accounts.

Thereafter, the Chief Magistrate asked another magistrate court employee, Nancy Grullon, to meet with respondent and Ms. Willis to review the bank accounts and assist them with the reconciliations. When respondent informed Ms. Willis of the meeting to review the bank accounts, Ms. Willis became irate, left for lunch, and never returned to the office.

Respondent then personally reviewed the court checking accounts and immediately realized that all deposits were not being made into the accounts. Respondent and Ms. Grullon discovered a bank bag in Ms. Willis' desk drawer that contained cash in the amount of $1,322.00 and non-deposited checks in the amount of $4,410.00. In addition, respondent and Ms. Grullon found a $25.00 money order in an unopened envelope and one check dated November 14, 2006 in the amount of $65.00 which had not been deposited. There was no identifying information to tie the cash to individual defendants or cases.

164

An examination by county staff of respondent's magistrate court bank records revealed an approximate shortage of $15,741.82 as of July 2007. An investigation into the exact amount of the shortage is ongoing.

On or about June 23, 2007, Ms. Willis gave a written statement to investigators in which she stated she had been employed by the county for six or eight years and with the magistrate's office for the last three years. She further stated that, within the previous six to eight months, she had become behind on her personal bills and, at some point, stopped making deposits of cash money in the magistrate court accounts and began taking sums from the court accounts to pay her bills. Ms. Willis took full responsibility for the missing money stating respondent had "nothing to do with this."

From approximately August 2006 until June 2007, respondent had relied solely on Ms. Willis to handle court money and reconcile bank statements. Respondent admitted to investigators that had she been reconciling the bank statements, this problem would have been discovered sooner. Further, respondent admitted that she had received training but had not performed her duties as required. Finally, respondent admitted she did not properly supervise Ms. Willis and did not supervise or conduct reconciliations of her official accounts.

## LAW

By her misconduct, respondent has violated the following Canons of the Code of Judicial Conduct: Canon 2 (judge shall avoid impropriety and the appearance of impropriety in all activities); Canon 2A (judge shall respect and comply with the law and shall act at all times in a manner that promotes public confidence in the integrity and impartiality of the judiciary); Canon 3 (judge shall perform the duties of judicial office diligently); Canon 3(C)(1) (judge shall diligently discharge her administrative responsibilities without bias or prejudice and maintain professional competence in judicial administration and should cooperate with other judges and court officials in the administration of court business); and Canon 3(C)(2) (judge shall require staff to observe the standards of fidelity and diligence that apply to the judge).

By violating the Code of Judicial Conduct, respondent has also violated Rule 7(a)(1) of the Rules for Judicial Disciplinary Enforcement, Rule 502, SCACR. In addition, she violated Rule 7(a)(7), RJDE, by willfully violating a valid court order issued by a court of this state.

## CONCLUSION

We find respondent's misconduct warrants a suspension from judicial duties. We therefore accept the Agreement for Discipline by Consent and suspend respondent for ninety (90) days. Within thirty (30) days of the date of this opinion, respondent shall pay the costs incurred in the investigation and prosecution of this matter by ODC and the Commission on Judicial Conduct.

**DEFINITE SUSPENSION.**

TOAL, C.J., MOORE, WALLER, PLEICONES and BEATTY, JJ., concur.